Thank you, Your Honor. John Corlew for the appellate, Mary Ainsworth, and I'm accompanied here by my colleague and co-counsel, Carol Ingram. This case, in our judgment, is a relatively simple case. It's a product liability case involving a forklift, and to prevail in this case under the Mississippi product liability law, we have to show that the finder of fact can determine that this forklift was defective and unreasonably dangerous. I'm sure the court knows that on summary judgment, the district court required that we have an expert witness on both feasible alternative design and on causation, and if the court may, I'd like to recite some of the undisputed facts in the case. It's undisputed that this forklift was designed for use in the poultry industry. It's undisputed that it had a backup alarm on it when it operated in reverse. It's undisputed that it had a bell on it when it operated in reverse. It's undisputed that it was also designed to go in a forward direction. It's undisputed that when it was going in a forward direction with a load, which could only be loaded in the front, the vision of the driver to the front was obscured. It's undisputed that the manufacturer, Moffett, did no visibility testing on this forklift. It's undisputed that on the day of the accident, the forklift was loaded. It's undisputed that it was going in a forward direction. It's undisputed that the driver could not see where he was going. It's undisputed that he did not see Mr. Ainsworth in his path of travel. It's undisputed that there was no horn, bell, alarm, or any other warning from that forklift to let— There was no automatic warning, but there was a horn that could be manually used. Yes, Your Honor, but the driver couldn't— It wasn't used by the driver. Yeah, he couldn't— But it existed. It existed. He couldn't see Mr. Ainsworth, so he couldn't sound his horn to tell him to get out of his way. Well, but your argument is that there should be this automatic beep, beep, beep, beep, so if that's needed, then if you can't see anybody, why can't you just start beeping when you can't see? You know, you find yourself going the wrong way on a one-way maybe. You start beeping your horn so that people are warned as you try to find your way back out of that situation. This gentleman could have done—the driver could have done the same thing. Well, with all due respect, I think that's an issue that a jury should decide. I think it's for the jury to say whether it should have been equipped with something that alarmed automatically or something that was manually warned. Okay, so then that leads me to this question. If this thing is beeping every time it moves, which is your argument, when it's going to the back, it already beeps. When it's going forward, it should beep. Aren't people going to just stop listening? I mean, these things are going to be beeping all day long everywhere and just drive everybody nuts. Well, again, that's a fact question, and that's— Well, is it? Yes, it is. You have to show that there's a feasible alternative design that wouldn't have its own problems that would, in fact, that would improve it, not make it worse. And if people are disabling alarms and going crazy from these things and ignoring these things, that's a human factors issue that I'm not sure the jury can necessarily figure out unless they're all chicken farmers. Well, and there's absolutely nothing in the record to support any of that. We'll get back to your expert. You were going to tell us why there was error in requiring an expert. Okay, Your Honor. And I'll come back to the other, if I may, Judge Haynes. In the Tolan case that just came out of the U.S. Supreme Court, the Supreme Court said that a court must believe the testimony of the non-movement and those justifiable inferences that can come from that believable testimony. Well, we're not asking you to believe any testimony. We're asking you to believe the undisputed evidence in this record, and we believe very strongly that it is a justifiable and reasonable inference that if Mr. Ainsworth had heard an automatic alarm going off as this forklift approached him, he would have gotten out of the way and he would not have been killed. Let me just get back to fundamentals. Your claim is based on a design defect, is it not? Yes, Your Honor. And you're controlled by the Mississippi Product Liability Act. Yes, Your Honor. And my question is, as I read that statute, one of the prongs that gets you home is that you've got to show that the product failed to function as expected. Yes, Your Honor. And so I'd like to hear your argument as to why this product didn't perform as expected. Well, again, I'm going to go back to the first thing is I think that is an issue that the jury will be instructed on and will make a determination about. What's your argument, though, that it did not perform as expected? Now, when he bought it, he knew it didn't have an alarm on the front wheel. Certainly, Mr. Ainsworth wouldn't say that it functioned as expected. I'm not sure that the driver would because the sense of it occurred. Don't you measure that from the buyer, between the buyer and the seller? The buyer, wouldn't you agree the buyer would have to know that this machine didn't have an alarm on the front wheel? Well, this test that you refer to has always been referred to in Mississippi as the consumer expectations test. And who is the consumer? And if it raises a fact question, then maybe the owner needs to get on the stand and testify to that. But if somebody walks in front of a moving machine, it is expected that they'll get run over. And I don't mean to take away from this. This is a very tragic case, so I don't mean to take away from that. But there's nothing unexpected about the fact that a machine contacting a human is a very bad thing for the human. So what was unexpected was Mr. Ainsworth being there, but it was certainly foreseeable that if somebody walks in front of a machine, they will, in fact, suffer injury or, in this case, a very tragic death. The manufacturer in this case. And the question is, is it unreasonably dangerous? And who makes that determination? In this case, the manufacturer specifically designed these forklifts for their usage in the poultry industry. They even named one of their forklifts for a Mississippi poultry manufacturer, a poultry producer, Sanderson Farms. They knew where this forklift was going. They knew how it was going to be used. They knew there were going to be dozens of workers on the ground moving chickens in, moving them out of the chicken houses, and they put this forklift into that environment, in our judgment, in an unreasonably dangerous way because they did have a feasible alternative design. It was just as easy to put that forward alarm on it as it was the backward alarm. And we do believe it's a justifiable and reasonable inference that Mr. Ainsworth would have gotten out of the way if the alarm had sounded. How would you distinguish our Austin versus Wilbert case, which, as you know, involved a telescoping mast on a TV truck? And, of course, they moved down the highway, and it came in contact with a high-power line and it electrocuted somebody. And the argument was that mast should have been insulated or there should have been something to warn people. And we said that this mast performed as expected. Everybody knew that it wasn't insulated and knew it didn't have an alarm. Your Honor, every one of these cases is different, and the cases from the Mississippi Supreme Court that have talked about an expert being desirable on feasible alternative design, as far as I can tell, the ones I've read are correct. I mean, there are products that are complicated, and I think the one that you described is a complicated product. We have fact witnesses who have been deposed who will come to court and say, well, 62 years of experience with this particular farm, Wayne Farms, and shop foreman and catch-and-haul manager who say it's just as easy to put a forward alarm on as a backward alarm on. Well, that doesn't take away from the fact that it functioned as expected by both the manufacturer and the purchaser because they all knew it didn't have a forward alarm. So why is that not expected by everybody? It may be a deficiency, but it's certainly expected. Well, it depends on who makes the decision. And we believe very strongly that this is an issue that is submitted to the jury. When you read the model jury instructions . . . We would have everything submitted to the jury, but there are cases that don't get to the jury, and at least the district court thought this was one. And at the heart of the thing was the performed-as-expected test, and there can be no question that the manufacturer and the longtime purchaser-user of these types of machines expected that it would beep in reverse and not in forward. And again, Your Honor, I think that's an issue that is to be submitted to the jury. Well, from your standpoint, everything is to be submitted to the jury. No. Let me back up just a moment because you raised the question of expert. What this district court said was that you lose because you didn't have an expert testify on feasible alternative design. Actually, you don't have anybody because your lay witness has just said, well, yeah, I guess if you have a back beeper, you can have a front beeper. That tells us nothing about a specific alternative design that reduces the risk without impairing the utility, usefulness, practicality, or desirability of the product under Phillips, the Mississippi 2012 Supreme Court case. So the point being, maybe a lay witness would be good enough, but the problem is no one said anything other than, well, if you can put it on the back, you can put it on the front. They didn't talk about whether the thing that we began with, which was my point about the human factors problem, that is part of the question of whether it impairs the utility, usefulness, practicality, or desirability of the product. So the Mississippi law, I believe, is that things that are within the common sense and practical experience of the jury are things that a jury should decide. But, see, you can't even answer my question about that. I hope I can. Because that is not within our experience. You know, driving a car is within our experience. Driving a chicken forklift is not, unless everybody in this town is a chicken forklift driver. Okay, so I've got a 20-year shop foreman and a 42-year catch and haul manager that work with Wayne Farms every day with these forklifts, repairing them, operating them, and using them. And their testimony is specific. You can put a forward alarm on this backup, same as a backup. It is feasible. It's impossible not to be feasible. If you can put it on the back, you can put it on the front. But they didn't say anything about whether it would impair. They said you can, like, physically. Does the physics exist? And everybody agrees, including your opponent, that the physics sort of the mechanics exist. But that doesn't tell us whether it is useful, practical, desirable, and all of that. And these guys didn't say it either. They just said, well, yeah, you can put it on the back, you can put it on the front. It is something that is useful because it does provide a warning automatically when it's going forward. You had a witness who said they saw on it what the equipment dealer that had it. Woes. And in his deposition, he was asked, well, how did you know it was going forward if you heard it beeping? He said, because I saw it coming at me. And he turned and looked. And that's what Mr. Ainsworth would probably have done. I think it is practical. I think the evidence is clear that if you can put one on the back, you can do it on the front. And it's desirable because it might warn against a tragedy instance. My car has a rear-view backup camera. Whenever I back up, it clicks on and shows me what's behind me. It doesn't have a forward one. Is it defectively designed because it doesn't have a forward camera? You're not working in an environment at a poultry farm where they're doing that and where they're loading the front of that forklift with these chicken crates, and they can't see when they go forward. Well, I can see what's on the ground in front of my car. It's just I can't see what's on the ground behind my car. I can see what's standing up but not what's on the ground. Respectfully, if you had one of these masks from a forklift in front of your car, you could not see where you were going. And everybody knew that they were putting that forklift into that environment. And the question is, is it unreasonably dangerous in that condition? And is it within the common sense and practical experience of the jury? And Judge Haynes, you raise this issue about human factors and habituation. Well, all through the Apple Leafs brief, we got source of confusion. You can't hear because of the loads in front. You're in a dirty environment. It might get clogged up. You might scare the chickens. There's no testimony in the record about any of that. That's the lawyers arguing. And at best, what they're doing is creating a fact issue about whether this feasible alternative design. You know what bothers me is all of this, you'd be exactly right in a regular tort case. But this comes under the Mississippi statute for product liability. And I don't think saying everything can be decided by the jury fits that framework. Respectfully, Your Honor, you've got four prongs under the Product Liability Act, four ways to prove that a product is unreasonably dangerous. It cannot comply with its specifications. It could breach a warranty. It could be a design defect. And it could be warnings. And the scholarly articles I've read, including Dean John Wade, who was one of the fathers of product liability law, says design defect and warning are beginning to end negligence theories. But they have in the statute the requirement about the alternative design. And, Your Honor, I think we have presented witnesses who testify that this is an alternative design. And we think it's within the common sense and the practical experience of the jury to say so. If they believe that, they may not believe it. Okay, Mr. Corley. You have a red light. Thank you very much, sir. You have some time left for rebuttal. Thank you, Your Honor. Okay, Ms. Rapito. I do need them. May it please the Court. In order to defeat summary judgment in this case, the plaintiff had to come forward and demonstrate to the Court that there was evidence to prove the essential elements of her case. One of those essential elements of the case was to show that the product in this case, a P5000 forklift, performed in a way that was unexpected, failed to perform as expected on the day of the accident. I think the argument this morning was here. And what would that look like, butt running over somebody? I mean, you don't expect to run somebody over. So what would meet this test? Fail to perform as expected would be that the product itself does something that was unanticipated by the user of the product. So, for example, most consumers have dryers in their home. Those dryers, as a general rule, stop when the door is open, or the door won't open if the dryer is still running. Industrial dryers, on the other hand, don't do that. They will continue to run. So if someone who doesn't know about industrial dryers opens one and is injured because it continues to run, that would satisfy the consumer expectations test. In this instance, and in numerous cases decided both by this court and by the Mississippi Courts of Appeal, products that do or behave in the way that the user or the injured party knew that they would behave, often the terms open and obvious are used. That has some applicability with regard to warnings claims, but it's also applicable to consumer expectations. Do we look at it through the eyes of the injured person or the operator or the buyer? You look at it through the eyes of those who interact with the product. In this case, that would be Mr. Walters. Why isn't that a jury question than what Mr. Ainsworth would have expected? Well, it's not a jury question in this case because the evidence is undisputed that he knew that there was no automatic forward alarm. There are training records in the record on appeal. So whether there's a design defect would depend on whether Mr. Ainsworth knew about it or what if I happened upon this chicken farm? I don't know anything about chicken farms, and I'm just kind of wandering around going, what a beautiful chicken farm, and wham, I get run over. It might be a different story. Whether there's a design defect in a machine depends on whether I, the person walking in front of it, knew something. The statute defines and describes how a plaintiff proves a case that a product was unreasonably dangerous, defective and unreasonably dangerous by virtue of a design defect. But doesn't it have to be an objective standard? I mean, how can you have a design defect case that would depend on whether I personally, as the person who got run over, knew that there was or wasn't a forward alarm on this? I mean, that might have to do with contributory negligence, but how would that, that just seems funny to me that something could be, this exact forklift could be defective in one farm and not in the other depending on who happened to walk in front of it. Well, I think that element has to be taken in context with the other elements of the claim, and it goes to whether or not, it goes to whether or not the product itself is unreasonably dangerous. So it is taken in the context of the use of the product. If you look at the feasibility element of the statute, it has a causation element, it has a possibility element. Does the alternative design exist? Is it possible? That was not a part of the summary judgment motion in this case. We don't contest that it would be possible to put a forward, an automatic forward alarm on, because it would be possible to put a backward alarm on. That wasn't the basis of the motion. The basis of the motion was there's no evidence that putting that alarm on would have prevented the accident without impairing the usefulness, utility, practicality, or feasibility of the product. What evidence would they need? Because I don't view the district court as requiring an expert. An expert can be helpful, but let's assume that an expert isn't required. What evidence should there be that wasn't here to avoid the summary judgment on the question of feasibility? I can only speculate because there was no evidence. There was no evidence presented in the proceedings below, nor has there been any evidence identified here. Perhaps there could have been testimony that Mr. Ainsworth didn't know, or he thought, and perhaps he told someone he thought it had an automatic alarm. You would think with a person who uses it. I think the point here is that when a product doesn't have a design aspect and the user clearly could not possibly not know it doesn't have that, it can't be considered unreasonably dangerous. That is consistent with the Austin case. That is consistent with the, I think it was Gray. That was another forklift case decided by this court. There is no evidence to show that a product failed to perform as expected when the injured party knew that the product did not have this aspect of the design on it. And perhaps, say, a consumer. My question was about feasibility, which is a little different. So my question was, we all know it's possible to add the alarm, and you're saying they didn't show that that wouldn't alter the usefulness, et cetera, et cetera. And I'm just thinking about the airbag litigation from 20 or 30 years ago before airbags became standard, and the argument was it adds too much to the expense. It can go off when there's no accident and injure people. So there were arguments about why the lack of airbags shouldn't be considered. I'm asking for that. And what is that kind of evidence that we would expect here? What evidence should they have presented that you would feel would be sufficient, if it existed, to show that it's feasible? They could have had the expert that they retained do a feasibility analysis. The expert that they retained that examined both an exemplar in Louisiana and the actual forklift at issue in this case in Mississippi didn't do a feasibility analysis. Dr. Kress has a Ph.D. in human factors engineering. He is a professor at two major universities. I can't explain why that wasn't done. Okay, what about the lay witnesses, the guy that saw it at Lowe's or whatever? Is that some evidence of feasibility? No, it's not evidence. It's not evidence of there are two components of feasibility. The first component, as I said, does it exist? Is it possible? Obviously, you could never hold a manufacturer responsible for incorporating an impossible design element. That's unreasonable. That is all that Kelly and Knight's testimony establishes. They were asked, can you do it? The response was from Kelly, yes, and the response from the question tonight was, do you know of any reason why you couldn't do it? And his response was, no, I don't know of any reason why you couldn't, but that doesn't the rest of the requirement for feasibility doesn't ask can you. It asks should you. Okay, so what evidence might there be on what? Were the witnesses asked anything about that, about whether it's a good idea to do it? They were not. Okay. Any of the witnesses, lay or expert? They were not. Let me ask you this. Isn't it within the range of most people's experience to know that trucks and industrial vehicles like forklifts have beepers when the vehicle is going backwards? And that that seems to be a feasible thing to do to warn people to get out of the way and that the same principle should apply with a vehicle going forward if the vision of the operator is blocked? Why isn't that something a jury could decide? It's not because as the plaintiff's own expert, and I misspoke a moment ago, Judge Haynes, and I apologize, you asked was any witness asked this question, and Dr. Kress was in fact asked that question in his deposition. And his response was it's not that simple. And it's not that simple because. . . Juries can decide some pretty complex issues. Well, juries can decide complex issues. Certainly they can, but they have to have evidence upon which. . . Why isn't that in the range of human experience? You know, we see trucks backing up that have beepers on. We see forklifts backing up with beepers on. And why wouldn't it be within the range of a jury to say, yeah, I mean if it's feasible in that context, it's feasible where the vision is blocked going forward? Well, I think Judge Haynes probably answered that question better than I could, and that is because most jurors are not going to know how things operate on a chicken plant. And most jurors don't come in contact with rough terrain industrial forklifts. The testimony in this case from Mr. Knight made it clear that these forklifts don't operate under consistent conditions on a day-to-day basis. I mean, what this expert said is that it isn't as simple as just putting a forward bell like it is a back bell because there's all these other issues. Exactly. And that's not that it's too hard for a jury to understand, but that it isn't as simple because of A than B. What are the other issues going forward that wouldn't be there going backwards on a forklift on a chicken farm? Well, if you have more than one forklift on a small farm so that they are operating in a close condition, and you have alarms going off when the forklift is in reverse, and you have alarms going off when the forklift is going forward, you can create a situation where the people on the ground don't know which forklift is alarming from which direction. Well, they could put different alarms, a horn going forward and a bell going back or something like that. So you know if you hear the one that's going forward, the other that's going backwards. Well, this would, of course, would have been good testimony for the plaintiff's expert to give, but he wasn't asked to develop that testimony. In fact, the plaintiff's expert testified in his deposition that he would not recommend an automatic forward alarm that went off all the time. Her expert testified that he was leaning toward, he hadn't actually formulated an opinion, but he leaned toward a forward alarm that would be triggered only when a load of sufficient size was loaded onto the forklift that would impair the driver's vision. And that's a more sophisticated thing than just the if it's back or if it's forward. Absolutely. We don't know anything about what that would mean. Well, and of course it is uncontested in the record that it did have a forward alarm. It was a manual forward alarm. And also the evidence is uncontested that both Mr. Ainsworth and Mr. Moffitt, excuse me, and Mr. Walters knew that it had a horn. They were trained to sound the horn when it was going forward. They knew it didn't have an automatic alarm on it. Well, I guess to me the question is, I mean, is this forklift driven forward a lot more than it's driven backward because it doesn't always have a load? And then you've got this thing beeping all the time and driving everybody crazy. I mean, that's the human factor's issue. Exactly. And it varies. The constant cacophony of beeping all around a busy, loud chicken farm that's got chickens squawking and people backing up and people going forward and all you're doing is adding more noise doesn't necessarily help things. And that's why I would like to have more evidence because I don't know because I don't work on a chicken farm. Correct, Your Honor. And I think that is the essential point, both of the summary judgment and in the briefs to this court here on behalf of Moffitt. There are specific burdens that are imposed on a plaintiff in a defective design product liability case. Those are statutorily imposed. And in order to get to a jury, you have to have evidence. Now, in our mind, well, not in our mind, it is a fact. The trial court did not tell Mrs. Ainsworth that she had to have an expert. The trial court told her she had to have evidence, and she didn't have any evidence. Well, actually, didn't the expert in a way affirmatively give bad evidence for the plaintiff by saying, I can't say it would have prevented the accident? Correct. And that's the only evidence we have on causation is couldn't say that it would have prevented the accident. Well, in fairness, he gave no testimony at all on causation. He testified in his deposition that he wasn't asked to give an opinion on causation. Well, but he couldn't give one, I thought. No. Well, he could not give an opinion about whether or not the forklift should or should not have been equipped with any proposed alternative design, including an automatic forward alarm. The most he would say is if it had one, it should be triggered because of the existence of a backward alarm. It should be triggered by the existence of a heavy load. Well, again, it had such an alarm on the forklift at issue. It was a horn. It had to be big. It had the very design. It just wasn't automatic. But the plaintiff saw an expert acknowledge the problems that could be caused by having both an automatic forward alarm and an automatic reverse alarm. What Chris said is I don't have an opinion about whether it would have prevented it or not, whether he would have ran over him if it had these design alternatives. I'm not addressing a specific cause, and I have not expressed an opinion on whether additional design changes would have had any causal connection with the outcome. So that's the only evidence on causation. Correct, and, Your Honor, we submit that's not evidence. It's not testimony as to causation in any way, shape, or form. Your Honor, I would like, if I could, to return to the issue of functioned as expected. Again, this is an essential element of the case, and I think it's important to note that the plaintiff simply didn't address it, either in terms of pointing to evidence that would have raised an inference that it failed to function as expected. She did not do that in the summary judgment stage in the trial court below. She did not even mention this essential element of her point in the brief. But we don't need to decide if it's a subjective or objective test because it just didn't evidence, period. Precisely. There's nothing in the record at all, and, in fact, didn't even address it today until the court asked about it, and the only response was essentially it's for a jury to decide, and Mr. Ainsworth didn't expect to be injured. But there are cases and cases, and we have cited many of them, that not expecting to be injured is not the appropriate inquiry under the statute. The appropriate inquiry is did you expect it to do something it didn't do? Did it do something you didn't expect it to do? The Glenn case out of the Mississippi Court of Appeals, very similar in some ways. The plaintiff in that case said the garage door should have had an automatic opener that would open any time carbon monoxide was tested. But she knew all it had was a manual opener, and because she knew that, she couldn't meet the consumer expectation test. Well, I'm just thinking about this, and I don't want to opine on the merits of it, but the whole GM issue about the car suddenly turning off while you're driving down the street, that is not functioning as expected. Again, I'm not saying they're liable because that's obviously still a pending matter, but if it's true that your car just suddenly shuts off as you're driving down the street because the key chain pulls on the key thing or whatever, that would not be functioning as expected. I would agree with you. All other things being equal. That's what I'm trying to get at is what that is. It seems to me to be an objective test, not whether Mr. Ainsworth knew what he knew, but just objectively, what is the purpose of this thing, and is it fulfilling that purpose? Your Honor, I agree with that assessment. In this case in particular, it is undisputed that Mr. Ainsworth knew. In fact, that's even incorporated into the lower court's order on the warnings claim, which has not been appealed to this court. It's an essential element of the claim. It is an essential element of the claim for which there is not now nor has there ever been any evidence in the record. For no reason other than that, this court should affirm the lower court's grant of summary judgment. Okay. Thank you very much. Mr. Corley, back to you, sir. Let me make at the outset a couple of points that I think are simply erroneous in the way in which this matter has been presented to the court by the appellee. Our expert, all through their brief, has said to have admitted, has conceded that he could not do, all this sort of thing. The fact is the expert, as he testified in his deposition that was taken by the appellants, said that he formed no opinions on feasible alternative designs and no opinions on causation because he was instructed not to. He was not tasked with it. I'm going to read the testimony under Mr. Raulston's questioning. Would you say then that you hold the opinion that a forward alarm would be advisable for this machine? Well, as I've said, I haven't made a final decision on the specifics of an alternative design. I have not been tasked with that project. I should task him with that project. To make an opinion about feasible alternative design. Whose decision was it to task him or not task him? It was counsel's decision, Your Honor. So that's why you have a summary judgment against you? Well, inappropriately in our view, Your Honor, and respectfully. And on the question of causation, when Mr. Raulston was examining, he says, so you will offer no causation opinions. And Mr. Corlew, who's at the deposition, says he is not going to offer causation opinions. So it's unfair to accuse this expert of having opinions. You're basically preventing there being any evidence from your expert. Your lay witnesses simply say that it's possible, which everybody concedes, and that's it. You're expecting a jury of people who we will assume are not chicken farmers to know what's going on on a chicken farm. And that's it. That's your case. You're going to get up and say, ladies and gentlemen, here's the undisputed facts. You figure out what happens on a chicken farm or we're not helping you. Your Honor, respectfully, the Mississippi law has always held that causation is a fact question. Your case here, the Arxton Young accounting case, absolutely just lays it out. You can't provide opinion testimony to give the bottom line on causation. It is a fact question for the jury. Now, your argument up here that there is no evidence, it's not accurate. Your evidence is because the accident happened, the machine caused it. That's it. And that, in every case, I mean, if nobody had an accident, we wouldn't have a case. So basically you're saying every case is going to go to the jury under this statute, which is a somewhat restrictive statute. No. First of all, if it requires an expert, that may be one thing. But if it's within the common sense and the practical experience of the jury, the Mississippi law says you do not need an expert. The restatement of torts on product liability says you do not need an expert on feasible alternative design. The text on American product liability law says that. Your case in Guy v. Crown Equipment says you do not have to have, per se, an expert. How did Guy come out? Well, it came out for the defendant in that case. But the law is that you do not have to have that expert and judge the district court's opinion. Said only one thing when it granted summary judgment. You have to have an expert to give this testimony or your case fails. And respectfully, there are other federal district cases in Mississippi, there's a string psych to four or five of them. They don't have any basis in any Mississippi case law, nor do they have any basis in any Fifth Circuit law interpreting Mississippi. Charlie, you need to talk to us about how and why this machine didn't perform as expected. Your Honor, it's a consumer expectations test. I've heard Your Honors raise the question, is it an objective test or not? What does a reasonable man do in a negligence case? Is it for an expert to come in and say this guy's reasonable and this guy's not? It's a reasonable man test. What would the reasonable consumer expect? And there is evidence. There is evidence that this forklift was there. There is evidence that he had no vision to the front, that the front was loaded, that he couldn't see where he was going, that he didn't see Mr. Ainsworth. There's evidence that Mr. Ainsworth walked in front of it. There's evidence that there was dust on the ground out there. There's evidence that has not been mentioned in the courtroom this morning, that the forklift was not very well maintained by Wayne Farms. And when this case is presented to a jury, then it's going to be for the jury to say, these are the facts. And they can find in our judgment that it was unreasonably dangerous not to equip this forklift with a forward alarm. And I don't think they need an expert to tell them they can do that. And if somebody wants to allocate fault to Mr. Ainsworth, they're going to have the opportunity to. They can allocate fault to Wayne Farms. They can do whatever the court allows them to do. You have a red light, Mr. Carlin. Thank you very much. We have your case.